IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN M. HALL, | No. 2:13-CV-2211-KJM-CMK-P |
| Plaintiff, | |
| vs. | FINDINGS AND RECOMMENDATIONS |
| ANTHONY GRAMMATICO, et al., | |
| Defendants. | |

Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the court are: (1) plaintiff's motion for summary adjudication (Doc. 40) as to the liability of defendant Sisson; and (2) defendant Sisson's cross-motion for summary adjudication (Doc. 41).[1]

/ / /

/ / /

/ / /

/ / /

## I. BACKGROUND

---

[1] The remaining defendants – except defendant Foulk, who has not been served – have filed an answer to the first amended complaint.

1

A. **Plaintiff's Allegations**

This action proceeds on the first amended complaint (Doc. 21). Plaintiff names the following nine individuals as defendants: correctional officers Grammatico, Cross, Shepard, Stephenson, and Eder; deputy warden Foulk; warden Peddicord; nurse Zhang; and correctional lieutenant Sisson.[2] According to plaintiff, he was "violently attacked" by defendant Grammatico on December 8, 2012. Plaintiff also claims that defendant Grammatico harassed his family members, who were at the prison that day for a scheduled visit. Plaintiff states that, ultimately, defendant Grammatico "terminated" his family visit, citing plaintiff's lack of a photo I.D. card. Plaintiff adds that, following a family visit the week prior, defendant Grammatico told him: "It's going to be a long time till you get another visit."

More specifically regarding the alleged assault by defendant Grammatico on December 8, 2012, plaintiff claims that defendant Grammatico had been told by a superior correctional officer that he (Grammatico) was "way out of line" for terminating plaintiff's family visit. Plaintiff adds that, after this reprimand, defendant Grammatico came to his cell, handcuffed him, and escorted him out of his cell. Plaintiff claims that defendant Grammatico then shoved him into a wall and said: "This isn't how you get things done around here." Plaintiff states that, after reaching the bottom of a flight of stairs, defendant Cross grabbed plaintiff's right arm, while defendant Grammatico had his left arm. According to plaintiff, defendant Grammatico then "aggressively twists and lifts" plaintiff's arms while his hands were still handcuffed. Plaintiff states that the following exchange then took place:

    Plaintiff:    Is this necessary? I just want to see my wife and daughter.

    Grammatico:    I don't care about any of that.

    Plaintiff:    Why are you doing this to me?

    Grammatico:    Because you're a little bitch!

---

[2] The Clerk of the Court will be directed to update the docket to add Foulk, Peddicord, and Sisson as defendants to this action.

1       Plaintiff next states that, following this exchange and with defendants Cross and
2  Grammatico still on either side of him, defendant Grammatico "picks up speed for approximately
3  six feet" when defendant Cross released his right arm and defendant Grammatico "crashes my
4  head into the building yard door, yelling 'I run ths fucking prison!.'" Plaintiff adds that defendant
5  Grammatico then forced his head against the door by grabbing his hair and "pushing against me
6  real hard with his body." Plaintiff states that, by this time, he is bleeding profusely from his
7  head.
8       Plaintiff alleges that defendant Grammatico then pushed him through the door and
9  out into the yard about 15 feet. According to plaintiff, defendant Grammatico then "dives on my
10 head with his left leg, pinning the right side of my face to the concrete, applying so much
11 downward pressure with his shin I swear it feels like my skull is going to fracture." Plaintiff
12 states that a pool of blood had formed on the ground under his head and that he then yelled for
13 help at the top of his lungs several times. Plaintiff adds that, about 30 seconds later, defendant
14 Stephenson placed leg restraints around his ankles. Plaintiff states that other officers then
15 responded to the scene and dragged plaintiff to the prison medical clinic.
16      Plaintiff claims that defendants Stephenson, Shepard, and Zhang falsified incident
17 and/or medical reports to cover up defendant Grammatico's assault. Plaintiff alleges that, as the
18 tower officer in charge on December 8, 2012, defendant Eder is responsible for the conduct of
19 subordinate officers. While plaintiff admits that defendant Eder did not personally witness the
20 alleged assault, defendant Eder nonetheless "should have known this." Plaintiff also alleges that
21 defendants Stephenson, Shepard, and Cross are liable for failing to act to stop the assault by
22 defendant Grammatico.
23 / / /
24 / / /
25 / / /
26 / / /

3

Next, plaintiff claims that he was placed in "punitive segregation" on December 8, 2012, following the alleged assault. He also states that he was charged with a rules violation. Plaintiff alleges that the hearing officer – defendant Sisson – refused to allow plaintiff to call any witnesses and ignored all his evidence. Plaintiff also claims that he appealed the finding that he was guilty of a rules violation but that defendant Peddicord denied his appeal. Finally, plaintiff alleges that defendant Foulk ignored evidence in order to cover up the alleged assault by defendant Grammatico.

    **B.**    **Plaintiff's Evidence**

Plaintiff states that the following relevant facts are undisputed:

1. Plaintiff was charged with the disciplinary offense of battery on a peace officer.
2. In his defense, plaintiff submitted a written statement.
3. Defendant Sisson refused to consider plaintiff's written statement.
4. Plaintiff submitted questions to multiple officers.
5. Defendant Sisson answered the question "In what manner was inmate Hall escorted out of your sight" with "Not relevant per SHO."
6. Defendant Sisson answered the question "Is outside the building where Grammatico really received his injuries using unnecessary and excessive force on Hall's head" with "Not relevant per SHO."
7. Defendant Sisson used Grammatico's medical report of injury as evidence against plaintiff in the disciplinary proceeding.
8. Defendant Sisson deemed each question posed to Sergeant Rodriguez as "Not relevant per SHO."
9. Defendant Sisson refused to call seven of plaintiff's requested witnesses.

Plaintiff's separate statement of undisputed facts is accompanied by plaintiff's own declaration, as well as the following exhibits:

    Exhibit A    "Rules Violation Report – Part C" dated January 8, 2013.

    Exhibit B    "Serious Rules Violation Report" dated December 18, 2012.

    Exhibit C    "Rules Violation Report – Part C" dated January 15, 2013.

Exhibit D   "Crime/Incident Report – Part C – Staff Report" dated December 8, 2012.

Exhibit E   "Inmate/Parolee Appeal" dated January 27, 2013.

C. **Defendant's Evidence**

Defendant states that the following facts are undisputed:

1. Plaintiff was issued a rules violation report charging him with the offense of battery on a peace officer,

2. K. Holmes was assigned as the investigative employee.

3. Plaintiff submitted a written statement to the investigative employee and a list of questions for various officers.

4. As the senior hearing officer, defendant Sisson determined that some of plaintiff's questions were irrelevant.

5. Plaintiff appeared before defendant Sisson for a hearing on the rules violation report on January 15, 2013.

6. None of plaintiff's witnesses were called to testify at the hearing because plaintiff indicated that he did not have any further questions for any witness beyond the written questions submitted prior to the hearing.

7. Plaintiff pleaded not guilty to the charged rules violation and stated in his defense that he did not believe officer Shepard observed the incident and that he never kicked officer Grammatico.

8. Defendant Sisson found that a guilty finding was supported by the following evidence: (a) the contents of the disciplinary report in which officer Grammatico reported that plaintiff kicked him; (b) a staff report in which officer Cross stated that he observed plaintiff kick officer Grammatico; (c) a staff report in which officer Shepard stated that he observed plaintiff kick officer Grammatico; (d) a staff report in which officer Stephenson stated that he observed plaintiff kick officer Grammatico; (e) a medical report in which nurse Zhang noted injuries to plaintiff consistent with the force reported by custody staff; and (f) a medical report in which physician's technician Brown noted injuries to officer Grammatico.

9. Defendant Sisson considered all evidence, including plaintiff's plea and statements.

10. Plaintiff has not filed any inmate grievance naming defendant Sisson.

///

Defendant's statement of undisputed facts is supported by his own declaration, the declaration of D. Clark, who is the prison appeals coordinator, and the various documents referenced above, which are attached as "Exhibit A" to defendant Sisson's declaration.

## II.  STANDARD FOR SUMMARY JUDGMENT/ADJUDICATION

The Federal Rules of Civil Procedure provide for summary judgment or summary adjudication when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).  The standard for summary judgment and summary adjudication is the same. See Fed. R. Civ. P. 56(a), 56(c); see also Mora v. ChemTronics, 16 F. Supp. 2d 1192, 1200 (S.D. Cal. 1998).  One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  Under summary judgment practice, the moving party

> . . . always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Id., at 323 (quoting former Fed. R. Civ. P. 56(c)); see also Fed. R. Civ. P. 56(c)(1).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  See Fed. R. Civ. P. 56(c)(1); see also Matsushita, 475 U.S. at 586 n.11.  The

opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987). To demonstrate that an issue is genuine, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted). It is sufficient that "the claimed factual dispute be shown to require a trier of fact to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631.

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. See Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed, see Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, see Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Ultimately, "[b]efore the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Anderson, 477 U.S. at 251.

### III. DISCUSSION

In his motion for summary adjudication, plaintiff argues that the undisputed

evidence establishes that defendant Sisson's handling of the disciplinary hearing violated plaintiff's right to due process. Defendant Sisson argues in his cross-motion that the undisputed evidence shows that plaintiff received a fair hearing. Defendant Sisson also argues that plaintiff's due process claim against him is unexhausted.

The Due Process Clause protects prisoners from being deprived of life, liberty, or property without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). With respect to prison disciplinary proceedings, due process requires prison officials to provide the inmate with: (1) a written statement at least 24 hours before the disciplinary hearing that includes the charges, a description of the evidence against the inmate, and an explanation for the disciplinary action taken; (2) an opportunity to present documentary evidence and call witnesses, unless calling witnesses would interfere with institutional security; and (3) legal assistance where the charges are complex or the inmate is illiterate. See Wolff, 418 U.S. at 563-70. Due process is satisfied where these minimum requirements have been met, see Walker v. Sumner, 14 F.3d 1415, 1420 (9th Cir. 1994), and where there is "some evidence" in the record as a whole which supports the decision of the hearing officer, see Superintendent v. Hill, 472 U.S. 445, 455 (1985). The "some evidence" standard is not particularly stringent and is satisfied where "there is any evidence in the record that could support the conclusion reached." Id. at 455-56.

Plaintiff first argues that defendant Sisson violated his due process rights through his "refusal to accept or consider plaintiff's version of events as his defense." According to plaintiff, defendant Sisson "attempted to explain his defense and was interrupted" by defendant Sisson, who "disallowed the plaintiff from being heard at the hearing verbally. . . ." Plaintiff also contends that defendant Sisson "suppress[ed]" his written statement. Second, plaintiff asserts that defendant Sisson's repeated determination that his written questions were not relevant resulted in the denial of his right to call witnesses.

Plaintiff's first argument – that his version of events was suppressed – is belied by the undisputed evidence. At the hearing, plaintiff pleaded not guilty to the charged rules

violation and stated in his defense that he did not believe officer Shepard observed the incident and that he never kicked officer Grammatico. Plaintiff has not presented any evidence to indicate that he was not allowed to state his defense at the hearing. As to plaintiff's written statement, the undisputed evidence establishes that the statement was received into the record by the investigative employee and that defendant Sisson considered the investigative employee's report in making his final determination. Again, plaintiff has not presented any evidence to the contrary.

Plaintiff's second argument – that defendant Sisson improperly determined that various questions were irrelevant – is foreclosed as a matter of law because the hearing officer may decide issues of relevance. See Wolff, 418 U.S. at 566.

### IV.  CONCLUSION

Based on the foregoing, the undersigned recommends that plaintiff's motion for summary adjudication (Doc. 40) be denied and that defendant Sisson's cross-motion for summary adjudication (Doc. 41) be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 14 days after being served with these findings and recommendations, any party may file written objections with the court. Responses to objections shall be filed within 14 days after service of objections. Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: September 7, 2016

_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE